UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:20-CR-46 JD
                                                     3:23-CV-414 JD

TERRELL DISMUKES

**OPINION AND ORDER**

Defendant Terrell Dismukes moved under 28 U.S.C. 2255 to vacate his conviction for

distributing heroin in violation of 21 U.S.C. § 841(a)(1). For the reasons stated below, the Court

will dismiss all the claims in the petition, but will take under advisement Mr. Dismukes's claim

that his trial counsel was constitutionally ineffective by failing to file an appeal on his behalf.

### A.  Factual and Procedural Background

In March 2020, a confidential informant told investigators that Mr. Dismukes was selling

drugs from a mobile home in South Bend, Indiana. The informant also reported having seen an

AR-15 and a handgun inside the home. Agents began watching the mobile home and saw Mr.

Dismukes coming and going on multiple occasions. (PSR, DE 120 ¶ 7.)

On March 27, the agents set up a controlled drug buy. The informant contacted Mr.

Dismukes and set a location for sale of heroin. Mr. Dismukes then left the mobile home and

drove to the meeting location. There, Mr. Dismukes got into the informant's car and handed

over a small baggie of heroin in exchange for cash. Mr. Dismukes told the informant he had

personal firearms, but wasn't willing to sell any to the informant, and the parties separated. Mr.

Dismukes drove back to the mobile home. The transaction in the car was video-recorded. Lab

tests confirmed that the baggie contained 0.872 grams of a substance containing heroin. (*Id*. ¶¶ 8–10.)

Agents obtained a search warrant for the mobile home. The search warrant was executed early in the morning on June 4, 2020, after Mr. Dismukes left the residence. The agents found heroin, a loaded handgun, an AR-15 rifle, scales with white residue, and about $2,000 in cash. They also found in the kitchen Mr. Dismukes's ID card and mail addressed to him. While the agents were still conducting the search, Mr. Dismukes came back and was detained and interviewed. He denied selling drugs and said that someone else owned the mobile home; he said that he had only stayed there. Agents confirmed that Jamie Vergon was the owner of the mobile home. (*Id*. ¶¶ 11–12.)

The next day, on June 5, the Government filed a criminal complaint and arrest warrant. (DE 1 & 2.) Four days later, on June 9, an initial appearance hearing was held before a magistrate judge. During the hearing, the magistrate judge advised Mr. Dismukes of his rights, forthcoming charges, and penalties, and appointed attorney David Vandercoy to represent Mr. Dismukes. (DE 6 & 7.) The indictment was filed the next day. (Indictment, DE 9.) Mr. Dismukes was initially charged with possessing a firearm as a felon, possessing with intent to distribute fentanyl, and possessing a firearm during and in relation to a drug trafficking crime. (*Id*.)

Mr. Vandercoy represented Mr. Dismukes for four months, until on October 28, 2020, when the Court granted his motion to withdraw. (DE 24.) Two days later, attorney David Jones was appointed to represent Mr. Dismukes. (DE 25.)

On March 24, 2021, Mr. Jones moved on behalf of Mr. Dismukes to suppress evidence obtained pursuant to the search warrant, including any derivative evidence. He argued that the informant's reports were unreliable and the affidavit in support of the search warrant failed to

establish a nexus between the alleged drug dealing activities and the mobile home, thus failing to sufficiently establish probable cause for the search. (Mot. Suppress, DE 37.) On June 10, 2021, the Court denied Mr. Dismukes's motion for three reasons. First, the search warrant affidavit contained sufficiently reliable information to support a finding of probable cause and the issuance of a search warrant for the mobile home. (Op. & Order, DE 43 at 5–6). Second, Mr. Dismukes had no legitimate expectation of privacy in the mobile home, so he lacked standing to challenge the search in the first place. (*Id*. at 7–8.) And last, the Court found that in any case the suppression of evidence was inappropriate because the officers who searched the mobile home acted in good faith.

On July 6, 2021, attorney Jones moved to withdraw his representation, and the Court granted the motion two days later. On July 12, attorney Mark Lenyo entered his appearance on behalf of Mr. Dismukes.

On October 13, 2021, a grand jury returned a superseding indictment. The superseding indictment added a count for selling heroin to the informant on May 27, 20202, and changed the controlled substance from a mixture of fentanyl to heroin in the possession with the intent to distribute count. (Superseding Indictment, DE 79.)

Mr. Dismukes then filed a series of pro se motions: motion to dismiss the indictment (DE 82), motion to object to the superseding indictment (DE 86), motion for violation of the Speedy Trial Act (DE 89), and motion to dismiss for violation of the Fourth Amendment.

On October 26, 2021, at what was supposed to be a video arraignment hearing, Mr. Dismukes demanded an in-person arraignment hearing. Mr. Dismukes also asked the Court to withdraw Mr. Lenyo from representing him. The Court rescheduled the arraignment to

November 3 with Mr. Lenyo appearing as standby counsel. At the hearing, the Court granted the motion to withdraw counsel (DE 95) and stated that a new counsel would be appointed.

As indicated, attorney Fred Hains entered his appearance on November 5. (DE 97.) Eleven days later, the Government filed a Plea Agreement signed by Mr. Dismukes and counsel. In the Plea Agreement, Mr. Dismukes agreed to plead guilty to the heroin distribution charge in exchange for the Government agreeing to dismiss the other counts. (Plea Agreement, DE 103 ¶ 9(h).) Mr. Dismukes agreed to waive, among other things, his right to appeal or collaterally attack his conviction or sentence, other than for ineffective assistance of counsel. (*Id*. ¶ 9(e).) On November 18, Mr. Hains filed a status report stating that Mr. Dismukes was withdrawing the four pro se motions without prejudice. (DE 105, ¶¶ 4–5.) The Court granted the motion the next day, on November 19. (DE 107.)

Magistrate Judge Joshua Kolar (now a judge for the Court of Appeals for the Seventh Circuit) held a change-of-plea hearing on November 30, 2021. At the hearing, Mr. Dismukes represented that he "had an ample opportunity to discuss the case against [him], including any possible defenses [he] may have, with [his] attorney, Mr. Hains." (Plea Hrg. Tr., DE 149 at 12.) During the hearing, Judge Kolar took a recess to allow Mr. Dismukes to consult with his attorney about the plea agreement. (*Id*. at 14–15.) Upon reconvening, Mr. Dismukes stated that he had enough time to speak with his attorney. (*Id*. at 15.) Mr. Dismukes said that he understood everything in the plea agreement, and that he was entering into the Plea Agreement freely, without any threats, and that no one had made any promises or assurances outside the plea agreement. (*Id.* at 16.) Later in the hearing, Judge Kolar confirmed each of these assurances again. (*Id*. at 20.) Judge Kolar also addressed the appeal waiver and collateral challenge three

times, with Mr. Dismukes saying he understood his waivers. Mr. Dismukes also said that he understood his waiver of trial-related rights. (*Id*. at 24–28.)

Mr. Dismukes admitted he was guilty of the charge in Count 4 of the Superseding Indictment (distributing a mixture and substance containing a detectable amount of heroin). He stated he sold heroin to someone on May 27, 2020. (*Id*. at 29–30.) In its factual basis, the Government stated that this sale was video-recorded, and Mr. Dismukes agreed to the Government's representation. (*Id*. at 30–31.) Finding that Mr. Dismukes was "fully competent and capable of entering an informed plea, [was] aware of the charge and the consequence of the plea, and because the plea of guilty is a knowing and voluntary plea that is supported by an independent basis in fact containing each of the essential elements of the offense," Judge Kolar recommended that this Court accept the plea of guilty on Count 4 of the Superseding Indictment. (*Id*. at 31–32.) After a period of objections to the report recommendations expired without any action from the parties, the Court accepted Mr. Dismukes's guilty plea and the parties' plea agreement on December 14, 2021. (Order, DE 112.) On May 19, 2022, the Court sentenced Mr. Dismukes to 30 months of imprisonment and 3 years of supervised release (DE 127.) Mr. Dismukes did not appeal his conviction or sentence.

A year after being placed on supervised release, Mr. Dismukes filed the instant motion under § 2255 asking the Court to vacate his sentence and dismiss the indictment. (DE 140-1.)

### B. Standard of Review

Section 2255(a) of Title 28 provides that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or

correct the sentence." 28 U.S.C. § 2255(a). The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted). Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068) (7th Cir. 2006)). "Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Bousley v. United States*, 523 U.S. 614, 621(1998) (quotation marks and citations omitted).

When interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe the pleadings liberally. *United States v. Rossiter*, 2016 WL 4611013, at *4 (N.D. Ind. Sept. 6, 2016) (collecting cases). Therefore, if a court can reasonably read the petitioner's pleadings to state a valid claim, the court should do so even if the pleadings do not cite proper legal authority, confuse various legal theories, use poor syntax and sentence construction, or display a lack of familiarity with pleading requirements. *Id.* (citing *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). However, a district court is not expected to assume the role of an advocate for a pro se litigant, and it cannot rewrite the litigant's petition to include claims that the litigant did not present. *Id.*

A § 2255 petitioner needs to submit evidence to support his claims; "naked assertions" are not enough. *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002). "[T]he petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had

actual proof of the allegations going beyond mere unsupported assertions." *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (citation omitted). A petition "signed under penalty of perjury" may also suffice to verify the petitioner's allegations so they "*become* evidence." *Kafo*, 467 F.3d at 1068. But unsworn allegations are "not even a scintilla of evidence." *Galbraith*, 313 F.3d at 1008. Verification is a threshold requirement: a "sworn affidavit with specific details" showing the petitioner has "actual proof of the conduct alleged [is] required as a predicate to securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1010; *see also Kafo*, 467 F.3d at 1067. Thus, a petition presenting "merely bare allegations," rather than a "detailed and specific affidavit," fails "the threshold requirement for securing an evidentiary hearing." *Galbraith*, 313 F.3d at 1009. When a § 2255 petitioner fails to file an affidavit or sworn statement but his allegations otherwise would be sufficient, courts generally offer a chance to fix the defect. *Kafo*, 467 F.3d at 1070–71. Still, requiring sworn testimony is more than a "mere technicality"; it "ensure[s] that a petitioner can provide some evidence … however minimal" to back his claim. *Id*. at 1068–69.

## C. Discussion

### (1) *Waived and Procedurally Defaulted Claims*

Mr. Dismukes is raising many claims but, other than his claims for ineffective assistance of counsel, they are both waived and procedurally defaulted. For example, Mr. Dismukes appears to claim that the search warrant affidavit lacked probable cause; that he was pulled over without a warrant, charged in violation of the Due Process Clause, and wrongfully held in detention for 96 hours before appointment of counsel; that his initial appearance was

unconstitutionally delayed; and that his rights under the Speedy Trial Act were violated. But none of these claims are actionable at this stage of the proceedings.

First, as the Government points out in its defense (Gov.'t Resp. Br., DE 153 at 9), Mr. Dismukes waived his right to collaterally challenge the merits of his case. A defendant may waive his right to an appeal or collateral challenge through a knowing and voluntary plea agreement. *Plunkett v. Sproul*, 16 F.4th 248, 253 (7th Cir. 2021). Such a waiver is generally enforceable and precludes review of claims within the scope of the waiver. *Id*. The Court of Appeals for the Seventh Circuit has "only a 'few narrow and rare' grounds for not enforcing a voluntary and effectively-counseled waiver of direct appeal or collateral review. For instance: if a district court relied on a 'constitutionally impermissible factor' like race or gender; if the sentence exceeded the statutory maximum; or if the proceedings lacked a "minimum of civilized procedure." *Oliver v. United States*, 951 F.3d 841, 844 (7th Cir. 2020) (citations omitted).

Mr. Dismukes entered into a plea agreement with the Government, agreeing to waive his right to challenge both his conviction and sentence in any court on any ground other than a claim of ineffective assistance of counsel:

> I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground other than a claim of ineffective assistance of counsel, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

(Plea Agreement, DE 103 ¶ 9(e).) At the change-of-plea hearing, Mr. Dismukes, while sworn under oath, repeatedly confirmed that he understood the waiver. (Plea Hrg. Tr., DE 149 at 18–19, 24, 27.) At the end of the hearing, Judge Kolar found Mr. Dismukes to be "fully competent and capable of entering an informed plea," and "aware of the charge and the consequence of the plea." Judge Kolar also found that Mr. Dismukes was entering his plea of guilty knowingly and

voluntarily. Yet, in his motion under § 2255, Mr. Dismukes has alleged nothing to even suggest that his waiver of his right to bring a collateral challenge was flawed. The Court is thus left with no option but to enforce his waiver. *See Plunkett*, 16 F.4th at 256 (dismissing the defendant's appeal where [i]n addition to signing a written waiver, which is presumed to be enforceable . . . [the defendant] also attested in his plea colloquy—to which we lend 'particular credence,'—to the fact that he made the waiver knowingly and voluntarily").

In addition, Mr. Dismukes has procedurally defaulted the claims he failed to raise on appeal. A habeas petitioner generally cannot assert any issues he might have raised on direct appeal. *See Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) ("Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted."). Even a defendant's challenge of "the voluntariness and intelligence of [his] guilty plea" will be procedurally defaulted unless it is "first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

If a claim is procedurally defaulted, it may "only be raised in a § 2255 proceeding if the defendant demonstrates that he is actually innocent, or that there is cause and actual prejudice." *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008) (citation omitted).

Mr. Dismukes did not bring a direct appeal, so he procedurally defaulted all claims except those dealing with the ineffective assistance of counsel. In addition, Mr. Dismukes has not asserted that he is actually innocent or that there is a cause and actual prejudice, and the record does not suggest any basis on which he could do that. Accordingly, the Court will consider only Mr. Dismukes's claims alleging ineffective assistance of counsel.

### (2)  *Ineffective Assistance of Counsel Claims*

Mr. Dismukes's petition under § 2255 rests on his claim that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. A criminal defendant is entitled to the assistance of counsel for his defense, U.S. Const. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and a defendant who was denied effective assistance of counsel can receive relief under § 2255, *Edmond v. United States*, 899 F.3d 446, 452–53 (7th Cir. 2018). To prevail on a claim of ineffective assistance of counsel, a defendant must show: 1) that his counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness; and 2) that he was prejudiced by the deficiencies in his counsel's performance, meaning that there is a reasonable probability that the results of the proceeding would have been different with effective representation. *Strickland*, 466 U.S. at 687; *Edmond*, 899 F.3d at 452–53; *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011). "Surmounting *Strickland*'s high bar is never an easy task" since "the *Strickland* standard must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

As to the first prong, the petitioner must establish that counsel's performance "fell below an objective standard of reasonableness" resulting in a failure to function "as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687–88. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the "wide range" of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "This means identifying acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (internal quotation marks and citations omitted). "The important inquiry is

10

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Koons*, 639 F.3d at 351 (internal quotation marks and citations omitted).

But even if the petitioner shows that counsel's performance fell below an objective standard of reasonableness, he would still have to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'" *Eckstein v. Kingston*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome. Indeed, it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams v. Taylor*, 529 U.S. 362, 394 (2000) (endorsing the legal standard articulated by the trial judge). Petitioner bears the "highly demanding and heavy burden of establishing actual prejudice." *Id.*

"Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, [the defendant] would not have pleaded guilty." *Galbraith*, 313 F.3d 1001, 1008. It's worth repeating that "'[s]urmounting *Strickland*'s high bar is never an easy task,' and the strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.' Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017) (citations omitted). To obtain relief on a claim that an attorney provided ineffective assistance by failing to properly advise a defendant on the consequences of a guilty plea, "a petitioner must convince the court that a decision to reject the plea bargain

would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). "[A] mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Anderson v. United States*, 981 F.3d 565, 576 (7th Cir. 2020) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (quoting *Berkey v. United States*, 318 F.3d 768, 772–73 (7th Cir. 2003))).

"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. "*Strickland*, 466 U.S. at 697. After all, "[t]he object of an ineffectiveness claim is not to grade counsel's performance." *Id.*

With these principles in mind, the Court turns to Mr. Dismukes's claims that various attorneys, or all of them, failed to provide him with constitutionally required representation.

(a) *Search Warrant*

Mr. Dismukes insists that his first attorney, Mr. Vandercoy, should have challenged the search warrant of the mobile home; that his second attorney, Mr. Jones, should have presented different arguments and evidence when he did challenge the warrant in a motion to suppress; and the next two attorneys, Mr. Lenyo and Mr. Hains, should have investigated and uncovered the errors of the first two.

These claims fail no matter which prong of the *Strickland* analysis is considered, but it's most efficient here to examine the prejudice prong. Mr. Dismukes has not shown that he was

prejudiced by the purported deficiencies in his attorneys' advocacy, that is, that "the result of the proceeding would have been different[.]'" *Eckstein*, 460 F.3d 844, 848 (7th Cir. 2006) (quoting *Strickland*, 466 U.S. at 694). The Court already resolved Mr. Dismukes's challenge to the search warrant—denying it for three reasons. First, the Court independently reviewed the affidavit and found it to be reliable. The allegations in the affidavit were detailed, included first-hand observations, and were corroborated, thus establishing probable cause for the search warrant. (Op. & Order, DE 43 at 4–7.) Second, the Court found that Mr. Dismukes lacked standing to challenge the search warrant because he did not have a reasonable expectation of privacy in the mobile home.[1] (*Id*. at 7–8 ("Mr. Dismukes has failed to establish that he had a reasonable expectation of privacy in the mobile home in question and, in fact, provided investigators with a different address in South Bend which is where he claimed to live. He also told investigators that while he did stay at the mobile park, he usually stayed in a different mobile home.").) Finally, the Court found that the suppression of evidence would be improper in any case because the officers relied on the search warrant in good faith. (*Id*. at 8–9.) In other words, while Mr. Dismukes thinks the attorneys should have done more, he has not shown that more would have made any difference.

(b) *The Timing of the Superseding Indictment*

Mr. Dismukes next argues that Mr. Lenyo should have sought dismissal of the charges in the superseding indictment because it was filed eighteen months after his arrest, in violation of

---

[1] Even now, Mr. Dismukes continues to claim that he did not live in the mobile home and was only a guest there who had no possessory interest in the items recovered during the search. (Def.'s Mot., DE 140-1 at 3; Def.'s Rep. Br.; DE 158 at 4.)

the Speedy Trial Act. (Def.'s Mot., DE 140 at 7.) Mr. Dismukes is convinced that, had such a motion been filed, he would have prevailed.

By foregoing the challenge under the Speedy Trial Act, Mr. Lenyo's representation did not fall below an objectively reasonable standard. Mr. Dismukes misunderstands the Speedy Trial Act. Although the Act requires the initial charges to be brought within 30 days of the person's arrest or service of summons in connection with such charges, *see* 18 U.S.C. § 3161(b) ("Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."), the Government may bring new charges in a superseding indictment outside the 30-day window. *See United States v. Hemmings*, 258 F.3d 587, 592 (7th Cir. 2001) ("As the Eleventh Circuit recognized in *Mosquera*, "'[t]he Speedy Trial Act does not guarantee that an arrested individual indicted within thirty days of his arrest must, in that thirty-day period, be indicted for every crime known to the government, failing which he may never be charged. In short, the Speedy Trial Act is not a statute of limitations.'"); *Cooper v. United States*, No. 09-162-DRH, 2012 WL 996947, at *10 (S.D. Ill. Mar. 23, 2012) ("Here, movant was arrested on July 10, 2003, and on August 7, 2003, a one count indictment was filed against movant. Subsequently, three superseding indictments were filed against movant, on January 4, January 20, and February 8, 2005, adding additional charges against movant. Trial began on March 21, 2005. It is movant's contention that his speedy trial rights were violated because the superseding indictments were filed more than thirty days after his arrest. This argument, however, has been rejected by the Seventh Circuit."). In short, Mr. Dismukes's argument is meritless as Mr. Lenyo's performance in relation to the requirements of the Speedy Trial Act was objectively reasonable.

(c) *First Appearance and Arraignment*

Mr. Dismukes complains that too much time elapsed (48 hours) between his arrest and his first appearance before the magistrate judge as well as the appointment of counsel (96 hours). He believes that, if he had had his first appearance sooner and if counsel had challenged the "unfiled charges and the items that were never found that the informant stated the defendant had at the property," the case against him would have been dismissed. (Def.'s Mot., DE 140-1 at 4–5.)

Insofar as Mr. Dismukes is complaining about the timing of the first appearance and the appointment of counsel, those are not *Strickland* issues, and as explained above, they have been waived and procedurally defaulted. But even to the extent that Mr. Dismukes believes that his counsel should have challenged these matters, he has not shown that he suffered any prejudice. Mr. Dismukes received a timely probable cause determination as shown in the criminal complaint and arrest warrant. (DE 1 & 2). Therefore, even if the initial appearance had been delayed, Mr. Dismukes suffered no prejudice. *See Baker v. McCollan*, 443 U.S. 137, 143 (1979) ("[S]ince the probable cause standard for pretrial detention is the same as that for arrest, a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial."); *Cannon v. Newport*, 850 F.3d 303, 307 (7th Cir. 2017) ("Last, Cannon contends that his second complaint pleads a Fourth Amendment violation because he was in jail for four days before being brought before a judge. But the judge who issued the warrant had found probable cause before Cannon was arrested; he was not entitled to another judicial determination."). Mr. Dismukes seems to suggest that he did suffer prejudice because he was

deprived of the opportunity to argue about the lack of probable cause for the search warrant, but, as explained above, he raised this argument in his motion to suppress, which—as it turned out—lacked merit in any case. In short, there is no reasonable probability that the outcome of the proceeding would have reasonably been different.

(d) *Motion to Continue Trial*

Next, Mr. Dismukes complains that Mr. Lenyo provided ineffective assistance of counsel when he moved to continue the trial without his consent. As with the other ineffective assistance of counsel claims considered so far, this one must be dismissed as well.

Mr. Lenyo, the third attorney appointed for Mr. Dismukes, moved to continue the trial so that he could have adequate time to discuss the case with Mr. Dismukes, review discovery, and pursue plea negotiations. Before filing the motion, he informed Mr. Dismukes of the need for a continuance but did not hear back from him. Although Mr. Dismukes did not consent to the filing of the motion, Mr. Lenyo's conduct was not constitutionally deficient. An attorney representing a criminal defendant may make independent strategic decisions, such as to continue a trial, even without the defendant's consent. *See United States v. Gearhart*, 576 F.3d 459, 463 n.3 (7th Cir. 2009) ("[The defendant] also argues that his Sixth Amendment rights were violated because: (1) his counsel did not obtain his consent before seeking continuances . . . . We reject [this] arguments as well. . . . [T]here is no requirement that counsel obtain [the defendant's] consent prior to making purely tactical decisions such as the decision to seek a continuance."). Mr. Lenyo did just that, as explained in his motion. If anything, Mr. Lenyo's filing the motion under the circumstances suggests diligence, not ineffective representation. Mr. Dismukes has not shown that he would have achieved a better outcome absent this continuance.

(e) *Appointment of Counsel (Mr. Lenyo)*

Mr. Dismukes submits that "the Court appointed [him] counsel without his consent" (Def.'s Mot., DE 140-1 at 7), that is, against his wishes. (*See* Def.'s Rep. Br., DE 158 at 7 ("Defendant never asked for another attorney in his motion at the time."); *id.* at 8 ("The Court stated he had an attorney but after defendant fired David P. Jones, he never asked for another attorney . . . Which defendant had a right to file his pro se motion after [Mr. Jones withdrew]. . . . The court failed to ask the defendant did he want another attorney or did he want to represent himself but instead appointed him counsel without his consent and failed to give him a hearing . . . .").) But as with the issue of the timing of his initial appearance and the appointment of Mr. Vandercoy to represent him from the start of this case, this, too, is not a *Strickland* issue, and has been waived and procedurally defaulted. If there's any fault at all, it is with the nature of the Court's appointment, not Mr. Lenyo, yet Mr. Dismukes never submitted this claim for review by the Court of Appeals. Nor has Mr. Dismukes demonstrated any prejudice as a result.


(f) *Vehicular Stop*

Mr. Dismukes complains about being stopped in his car while returning to the mobile home while it was being searched by the agents. He insists that the agents had no right to stop a "social guest" and to interrogate him, and, if his counsel had challenged the stop, the outcome of his case would have been different. Mr. Dismukes's argument is too vague to be actionable. Apart from showing his dissatisfaction with the traffic stop, Mr. Dismukes has identified no evidence that relates to the count of conviction or that would have reasonably affected the outcome of the case.

(g) *Plea Proceedings*

Mr. Dismukes alleges that his last appointed attorney, Mr. Hains, told him that the Government offered a plea agreement and he needed to take it or he was going "to get a long time in jail." (Def.'s Mot., DE 140-1 at 9.) In his Reply brief, Mr. Dismukes clarifies that Mr. Hains did not threaten him. (Def.'s Rep. Br., DE 158 at 17.) As best the Court understands the allegations, Mr. Hains told him that he could take up the representation issues in a § 2255 motion, while Mr. Dismukes wanted Mr. Hains to address those issues before changing his plea to guilty.

The Government argues that Mr. Dismukes's allegations are lacking because they're not supported by an affidavit. In turn, Mr. Dismukes insists that his statements are true and backed up by the exhibits, and that he has reserved the submission of an affidavit for when the Court appoints him counsel.[2] No matter how the Court construes Mr. Dismukes's allegations, he has not stated a claim for ineffective assistance of counsel concerning the plea negotiations. Mr. Dismukes has not explained what he means by "a long time in jail" and has not shown that Mr. Hains's statement was not true, or that Mr. Hains pulled his estimate out of thin air. Mr. Dismukes states that Mr. Hains did not threaten him, so the Court does not have to be concerned that Mr. Hains was attempting to overpower Mr. Dismukes's free will. Be they true or not, what is missing from Mr. Dismukes allegations is even a scintilla of evidence of constitutionally deficient legal representation. Mr. Dismukes does not explain what exactly Mr. Hains told him or

---

[2] The Court has reviewed Mr. Dismukes's exhibits but fails to understand how they help his claim that his attorney was ineffective at the plea negotiations stage. He attached a page from the Plea Agreement dealing with the waiver of his appeal and collateral attack rights, as well as his consent to plead guilty before a magistrate judge, but these documents have no bearing on what Mr. Hains may have told him or what took place between the two of them.

how he misinformed him, and without such evidentiary support, Mr. Dismukes's claim related to his plea of guilty cannot proceed any further. *Cf. Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) 1009 ("[Defendant] presents no affidavit from himself or his trial counsel supporting his version of his attorney's conduct, nor any other available, probative evidence that would effectively support [his] claim. Without any such evidence, there is no clear error in the district court's denial."). Just as important is the fact that Mr. Dismukes offers no evidence that casts doubt on his sworn statements during the plea colloquy that he understood the terms of the Plea Agreement, that he was entering into the Plea Agreement freely, without any threats, and that no one had made any promises or assurances outside the Plea Agreement. Nor does he provide any reason why the Court should ignore his prior sworn testimony. *Cf. United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus, when the judge credits the defendant's statements in open court, the game is over."); *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").

But even assuming that Mr. Dismukes could show that Mr. Hains's performance fell below an objective standard of reasonableness, he has not shown, and has not even argued, that but for his counsel's alleged errors, he would not have pleaded guilty and would have gone to trial. Accordingly, Mr. Dismukes has failed to demonstrate that he has suffered any prejudice because of his guilty plea. *Cf. United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005) (noting that a defendant must present objective evidence that he would have gone to trial*); see*

*United States v. Multani*, 420 F. App'x 621, 624 (7th Cir. 2011) (rejecting an ineffective

assistance claim where "there is nothing in the record or in [the petitioner's] Rule 51(b) response

suggesting that [he] would not have pleaded guilty had the court discussed with him the

forfeiture count at the plea colloquy"); *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir.

2010) ("We find that [the defendant's] ineffective assistance claim fails because he did not

adequately show that he would not have pled guilty even had his attorney fully explained to him

that a Rule 35 motion to reduce his sentence was not guaranteed.") (citations omitted).

    (h) *Counsel's Alleged Failure to File an Appeal*

        Finally, in his motion, Mr. Dismukes states multiple times that he tried to appeal the

Court's judgment but his attorney failed to respond. (Def.'s Mot, DE 140-1 at 9 ("[D]efendant

tried to do a direct appeal but his attorney never responded to him"; (DE 140 at 1) (Defendant

"tried to file a direct appeal but attorney never responded to the defendant's request").) He

reiterates the same claim several times in his reply brief (*see* Def.'s Rep. Br., DE 158 at 9

(". . . Defendant tried to file a direct appeal but attorney never responded to the defendant's

request causing him to file a 2255."); *id*. at 15 ("The defendant tried to do a direct appeal but his

attorney never responded to him.")), and adds that there "should be a recorded phone call

between the defendant and Fred R. Hains assistant, approximately around the time of the appeal

and the defendant explain how he fail to investigate previous attorney conduct . . . for appeal and

the (sic) have a witness" (*id.* at 17).

        Counsel is ineffective if he disregards a client's specific instructions to file a notice of

appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Additionally, an attorney must consult

with a defendant about possibly appealing if "there is reason to think either (1) that a rational

defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. It is less likely that a defendant who pleaded guilty would rationally want to appeal. *Id*.

An attorney also must "remain[] reasonably available" to the client during the appeal window. *Corral v. United States*, 498 F.3d 470, 474 (7th Cir. 2007). The attorney need not "adjust his or her schedule in anticipation of the client's decision to appeal." *Id*. If, however, a client makes "reasonable efforts to contact his lawyer about an appeal during the [filing] period, his lawyer must make a reasonable effort to reach the client before the time for filing a notice of appeal expires." *Id*. But "a defendant who … makes no real effort to inform counsel is not entitled to relief." *Id*.

"An attorney's failure to file a notice of appeal when requested to do so falls below objective standards for reasonably effective representation and, in fact, is tantamount to no representation at all on appeal. In such circumstances, a petitioner is not required to show prejudice under the *Strickland* test. Such abandonment is a *per se* violation of the petitioner's Sixth Amendment right to counsel." *Elam v. United States*, 2007 U.S. Dist. LEXIS 816, *3 (S.D. Ill. Jan. 8, 2007) (citing *United States v. Nagib*, 56 F.3d 798, 801 (7th Cir. 1995), and *Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994)).

The Government argues that the failure-to-appeal claim should be dismissed outright because Mr. Dismukes's unsworn allegations do not constitute evidence. (Gov't Resp. Br., DE 153 at 21–22.) Furthermore, according to the Government, Mr. Dismukes's allegations are vague, conclusory, and palpably incredible rather than being detailed and specific, so it cannot be said that he actually instructed his counsel to file an appeal. (*Id.* at 22.) Finally, the Government

faults Mr. Dismukes for failing to clearly state "what, if anything, he actually communicated to counsel or his office." (*Id.* at 23.)

The Court agrees with the Government to the extent that it argues that Mr. Dismukes's statements do not have the indicia of reliability because they're unsworn.[3] A "detailed and specific" affidavit is a threshold requirement for a § 2255 petition. *Kafo*, 467 F.3d at 1067 (7th Cir. 2006). For a hearing to be granted, Mr. Dismukes must accompany his petition with "actual proof of the allegations going beyond mere unsupported assertions." *Id.* (quoting *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)). "Requiring either that the motion be signed under penalty of perjury or be accompanied by an affidavit is thus not a mere technicality of pleading; once a pleading is submitted in this form, the allegations contained therein become evidence and permit the district court to evaluate properly the movant's allegations and to determine whether a sufficient threshold showing has been made to warrant further proceedings." *Id.* at 1068.

However, the Court will grant leave to Mr. Dismukes to cure this deficiency and submit––if he so wishes—a statement signed under penalty of perjury explaining in greater detail what exactly he did to inform Mr. Hains of his desire to appeal the Court's judgment. *Cf. Kafo*, 467 F.3d at 1070–71 (when a § 2255 petitioner fails to file an affidavit or sworn statement but his allegations otherwise would be sufficient, courts generally offer a chance to fix the defect). In other words, the statement should indicate when he sought to contact Mr. Hains and how, whom

---

[3] Although Mr. Dismukes refers to his motion as an "affidavit" (*see* Def.'s Mot., DE 140-1 at 1 (titling the motion as "Affidavit/motion 2255 with exhibits") and Def.'s Rep. Br., DE 158 at 18 ("The defendant only gave an affidavit . . . .")), it is not signed under penalty of perjury. As such, it does not have the weight of an affidavit. *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.") (citation omitted)). In other words, since his petition is not signed under penalty of perjury and it is not an affidavit, Mr. Dismukes's statements cannot serve as evidence.

he spoke with and what he told them, and what they told him. To the extent that Mr. Dismukes wants to submit any statements from his witness or witnesses, he may do so as well. The Court is granting this extra opportunity to Mr. Dismukes because it finds that it is in the best interest of justice to fully develop the record before deciding the validity of his claim related to Mr. Hains's representation.

### D. Motion for Appointment of Counsel

Along with his motion under § 2255, Mr. Dismukes is requesting that the Court appoint him counsel (Mot. for Counsel, DE 140). "A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel. Rule 8(c) of the Rules Governing Section 2255 Proceedings, however, requires that counsel be appointed for indigent prisoners if an evidentiary hearing is required." *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992). The Court finds that Mr. Dismukes was able to sufficiently articulate his claims and the claims are relatively straightforward, so the interests of justice do not support the discretionary appointment of counsel so far. Accordingly, his motion for appointment of counsel will be denied. However, if the Court finds that an evidentiary hearing is required to resolve the remaining claim, the Court will appoint counsel for Mr. Dismukes as required by Rule 8(c).

### E. Conclusion

For these reasons, the Court DISMISSES all of Mr. Dismukes's claims, except for his claim that Mr. Hains provided ineffective assistance of counsel by failing to appeal his case. The Court takes the latter claim UNDER ADVISEMENT. Mr. Dismukes is GRANTED LEAVE to

supplement this claim as indicated above by July 19, 2024. If Mr. Dismukes files the supplement, the Government must respond within 7 days of the filing.

The Court DENIES Mr. Dismukes's motion for counsel (DE 140).


SO ORDERED.

ENTERED: June 28, 2024

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court